UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY K.[1], <br><br> Petitioner, <br><br> v. <br><br> WARDEN CALIFORNIA CITY CORRECTIONS FACILITY, et al.,[2] <br><br> Respondents. | No. 1:26-CV-00562-TLN-AC <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Ajay K.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 3.) Respondents filed an opposition. (ECF No. 10.) Petitioner did not reply. For the reasons set forth below, Petitioner's Motion is GRANTED. Respondents are ORDERED to IMMEDIATELY RELEASE Petitioner and are

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first names and last initial, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Respondents ask the Court, via footnote, to strike and dismiss all respondents other than the warden of the current detention facility. (ECF No. 10 at 1 n.1.) The request, as made, is improper. If Respondents seek to dismiss other respondents from this action, they must do so in a properly noticed motion. *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) ("[A] request for court order must be made by motion. As a result, a request for affirmative relief is not proper when raised for the first time in an opposition.").

1

further ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

## I. FACTUAL BACKGROUND[3]

Petitioner is a citizen and national of India and an asylum applicant in the United States. (ECF No. 3 at 2.) On April 15, 2023, Petitioner entered the United States to seek refuge and asylum. (*Id.*) Immigration authorities later released Petitioner into the United States. (*See* ECF No. 10 at 2.)

Petitioner has no criminal history. (ECF No. 3 at 2.) He has never been found to be a danger to the community or a flight risk. (ECF No. 1 at 15.) Petitioner also asserts he has never failed to appear for immigration proceedings. (*Id.*)

On December 1, 2025, Petitioner was apprehended by immigration authorities. (*Id.* at 11.) At the time Petitioner was taken into custody, there were no pending removal proceedings against Petitioner and Petitioner did not have a final order of removal. (*See id.*; ECF No. 10 at 2.) Petitioner was detained without an individualized custody determination or bond hearing.[4] (ECF No. 1 at 11, 14.) After his detention, Respondents placed Petitioner into expedited removal proceedings. (ECF No. 10 at 2.) On December 30, 2025, an immigration judge issued a final order of removal for Petitioner. (*Id.*)

Petitioner has now been detained three months, and he challenges the lawfulness of his civil detention and seeks immediate release.[5] (*See* ECF Nos. 1, 2.)

---

[3] The facts are not disputed.

[4] Petitioner is currently detained at the California City Corrections Facility. (ECF No. 12 at 1.) He was also detained there continuously from December 1, 2025 to January 22, 2026. (ECF No. 1 at 12; ECF No. 8-1 at 2.) On January 22, 2026, Respondents transferred Petitioner to Arizona; on January 23, 2026, Respondents transferred Petitioner to Texas. (ECF No. 8-1 at 2.) Respondents filed a motion to dismiss for lack of jurisdiction asserting Petitioner was no longer in California at the time Petitioner filed his habeas petition. (ECF No. 8.) Respondents have since transferred Petitioner back to the California City Corrections Facility. (ECF No. 12.) As a result, Petitioner is presently physically confined in the Eastern District of California and this Court has jurisdiction. 8 U.S.C. § 2241(a); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (jurisdiction lies in "the district of confinement"). Thus, Respondents' Motion to Dismiss for Lack of Jurisdiction (ECF No. 8) is DENIED.

[5] Respondents request the Court lift its Order prohibiting Petitioner's transfer out of the

2

## II. STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III. ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause.[6] The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.

---

Eastern District of California while this case is pending so Respondents can execute Petitioner's removal. (ECF No. 12.) Petitioner opposes the motion. (ECF No. 13.) In light of this Order to return Petitioner to status quo ante litem, Respondents' motion is DENIED as moot.

[6] Petitioner also claims that Respondents have violated the Administrative Procedure Act and the Immigration and Nationality Act ("INA"). (ECF No. 1 at 14–16.) Having found relief warranted under the Fifth Amendment claim, the Court declines to address cumulative violations.

3

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

          i.        Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was initially released from immigration custody when he came to the United States in 2023.  (ECF No. 10 at 2.)  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  During his

4

release, Petitioner asserts he complied with all conditions of his release, he does not have a criminal record, and he has never been found to be a danger or a flight risk.  (ECF No. 1 at 15; ECF No. 3 at 2.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  "Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)).

In opposition, Respondents argue that since December 16, 2025 — approximately 15 days after Petitioner's arrest — Petitioner has been mandatorily detained under either 8 U.S.C. § 1225(b)(1) (mandatory detention after a negative credible fear screening) or 8 U.S.C. § 1231(a)(2) (mandatory detention in 90-day removal period following order of removal).  (*See* ECF No. 10 at 3.)  Even taking Respondents' claims of authority as true, Respondents' cited detention authority does not provide a basis for Petitioner's re-detention.  The fact that a removal order was issued *after* Petitioner's arrest does not alter this Court's finding that Petitioner had a liberty interest at the time of his arrest — when there was no order of removal, nor negative credibility determination.  In fact, no removal proceedings had been instituted against Petitioner yet. (ECF No. 1 at 11; ECF No. 10 at 2.)  Thus, a final order of removal or negative credible fear screening could not have been the basis for revoking Petitioner's liberty.  Additionally, this Court has repeatedly found that where a non-citizen is released into the country and a liberty interest is created by government action, Respondents unilateral invocation of § 1225(b)(1) does not extinguish that liberty interest without proper process.  *See, e.g., Amarjeet S. v. Noem*, No. 1:26-CV-00559-TLN-EFB, 2026 WL 550130, at *3 (E.D. Cal. Feb. 27, 2026).  Accordingly, Petitioner had a liberty interest protected by due process at the time of his arrest.

### ii.  Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, as discussed above, Petitioner has a substantial private interest in remaining free from detention. Petitioner lived in the United States for over two years. Despite that, Petitioner has now been detained for nearly three months, cut off from the life and relationships he built. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner did not receive and individualized custody determination or bond hearing. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up). Here, Petitioner contends that he was never found to be a danger to the community or flight risk, that he attended all his immigration proceedings, and had no criminal history. (ECF No. 1 at 15; ECF No. 3 at 2.) Without a legitimate interest at the time of detention, or processes to ascertain whether there was a legitimate interest, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for

1  Respondents.  Any delay in detention (if justified) for the time to provide notice and a hearing is
2  minimal.  Certainly, the Government has an interest in removing individuals for whom there is a
3  final order of removal.  However, the Government can execute its interests in removing
4  individuals while adhering to the most basic procedural safeguards.  Therefore, the Court finds
5  this last factor also weighs in Petitioner's favor.

6  The Court finds that, under these circumstances, Respondents were required to provide
7  notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the
8  Constitution requires some kind of a hearing *before* the State deprives a person of liberty or
9  property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court
10 describes post-deprivation remedies as the "special case" where those are "the only remedies the
11 State could be expected to provide." *Id.* at 129.  Here — where there was no final order of
12 removal, no stated change in circumstances, and no criminal history — the Court finds pre-
13 deprivation notice and hearing are possible and valuable to preventing erroneous deprivation of
14 liberty.  Further, Respondents have not provided any substantive opposition to the contrary.
15 (*See* ECF No. 10.)

16 Respondents did not provide a pre-deprivation hearing.[7]  Nor did Respondents provide a
17 post-deprivation individualized custody determination hearing or bond hearing.  (ECF No. 1 at
18 11, 14.)  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is
19 likely to succeed on the merits, or at a minimum, that he has raised serious questions on the
20 merits.

21                       *iii.*       *Mootness*

22 Respondents argue their detention authority under 8 U.S.C. § 1231, acquired 29 days after
23 Petitioner's arrest, moots Petitioner's claims of unlawful re-detention.  (ECF No. 10 at 4 (citing
24 *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (for the proposition that there is no longer a case or
25 controversy)).)  "Federal courts lack jurisdiction to decide moot cases because their constitutional
26 authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464

---

[7] It is not clear from the current record, but the Court is also concerned that neither notice nor warrant was provided.

7

U.S. 67, 70 (1983). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). And a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *United States v. Yepez*, 108 F.4th 1093, 1099 (9th Cir. 2024) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

The basis for Petitioner's claim is constitutional, not statutory. Therefore, it does not evaporate with a shifting basis for statutory authority. *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)." (citing *Demore v. Kim*, 538 U.S. 526 (2003); *Nielsen v. Preap*, 586 U.S. 392 (2019)); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))). As the Court found above, Petitioner has a valid constitutional claim as to his re-detention for which he is likely to succeed. This Court can return Petitioner to the status quo ante litem to ensure any re-detention is constitutionally compliant. Thus, a live controversy still exists for which this Court may provide redress. Without explanation or case law explaining how later-acquired statutory authority cures a constitutional violation or eliminates a controversy, Respondents' conclusory statements as to mootness are insufficient.

B. <u>Irreparable Harm</u>

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application. Moreover, "[i]t is well established that the

deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

            C.        <u>Balance of Equities and Public Interest</u>

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for a TRO and, as it has with dozens of indistinguishable cases before him, orders Petitioner's release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:[8]

1. Respondents' Motion to Dismiss for Lack of Jurisdiction (ECF No. 8) is DENIED as MOOT.
2. Respondents' Motion to Dissolve Temporary Restraining Order (ECF No. 12) is DENIED as MOOT.

---

[8] It appears Petitioner also requests this Court to prohibit execution of the removal order. However, under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders[.]" Petitioner provides no contrary authority granting this Court jurisdiction to act upon a removal order.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 3) is GRANTED.

4. Respondents must IMMEDIATELY RELEASE Petitioner AJAY K. from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. At the time of his release, Respondents must also return all of Petitioner's documents and possessions.

5. Respondents must file a notice of compliance with this Order no later than **March 9, 2026**.

6. Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

7. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus and enter a final judgment in favor of Petitioner. If Respondents shall file a response by **March 13, 2026**. Failure to timely respond will be construed as non-opposition. L.R. 230(c). Petitioner may file a reply by **March 20, 2026**. The parties shall indicate in their briefing whether they request a hearing.

8. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE